# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JERONE MCDOUGALD, | Case No. 1:16-cv-1099 |
| Plaintiff, | |
| | Barrett, J. |
| vs | Bowman, M.J. |
| MICHAEL DILLOW, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner at the Southern Correctional Facility (SOCF) and frequent litigant in this Court,[1] filed this civil rights action in November 2016. This matter is now before the Court on cross-motions for summary judgment. (Docs. 34, 43).

**I. Background and Facts**

Plaintiff is currently in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") and is serving his prison sentence at Southern Ohio Correction Facility ("SOCF"), Lucasville, Ohio.

On November 23, 2016, McDougald filed his complaint alleging various violations of his First and Eighth Amendment rights relating to pepper spray ("use of force")

---

[1] *See, e.g.,* Case Nos: 1:08-cv-744 (claim of excessive force during arrest); 1:16-cv-317 (First Amendment retaliation claims); 1:16-cv-497 (Eighth Amendment claims regarding use of pepper spray on multiple dates); 1:16-CV-500 (claim relating to medical care for colitis, including allegedly prescribed high calorie diet); 1:16-cv-633 (case transferred to Eastern Division, reopened as 2:16-cv-545); 1:16-cv-900 (claims regarding use of pepper spray and retaliation); 1:17-cv-72 (above-captioned case regarding involuntary blood draw); 1:17-cv-91 (alleged violation of due process rights in RIB hearing, and retaliation claim); 1:17-cv-95 (claim regarding use of pepper spray); 1:17-cv-124 (claim regarding use of pepper spray); 1:17-cv-127 (claim regarding "flood of biocontaminate" in cell); 1:17-cv-196 (retaliation claim); 1:17-cv-464 (involuntary blood draw), 1:18-cv-80 (pepper spray incident of August 7, 2017); 1:18-cv-93 (September 28, 2017 alleged attack and denial of medical treatment); 1:18-cv-135 (same September 28, 2017 incident); 2:16-cv-545 (claim regarding failure to provide kosher meals). In addition, Plaintiff previously has filed two petitions for habeas corpus: Case Nos. 1:11-cv-790; 1:16-cv-565. The undersigned recently noted in Case No. 1:16-cv-500 that Plaintiff appears to be equally litigious in state court.

1

deployed against him on October 7, 2016 while incarcerated at SOCF. (Doc. 1). Following the Court's initial screening Order (Doc. 6), McDougald's allegations include: Deliberate Medical Indifference (Sgt. Dillow, Osborne, Nurse Reiter, Bauer, Rogers); Excessive Force (Sgt. Dillow, Osborne); and Retaliation (Sgt. Dillow, Osborne). McDougald names various Defendants including Bauer, Lt., Dillow, Rogers, Lt., Osborne, and Nurse Reiter[2] and sues each in their individual capacity for $50,000 punitive damages. *Id.* Defendants answered McDougald's complaint on January 17, 2107, which included several affirmative defenses. (Doc. 9).

McDougald alleges that Osborne bent McDougald's wrist back "for no reason" during a cuffing incident on October 7, 2016. McDougald alleges Sgt. Dillow came up to the cell door and pepper sprayed him followed by both Dillow and Osborne stating "this is for filing lawsuits." McDougald alleges that Dillow and Osborne applied excessive force in violation of his Eighth Amendment rights. McDougald also alleges he was left in a cell with difficulty breathing and that his requests for help were ignored. (Doc. 1 at 2). McDougald claims that he requested help when Nurse Reiter and Osborne looked into his cell during the time that he was suffering the effects of pepper spray but that both Reiter and Osborne ignored McDougald's request for help. McDougald believes that Nurse Reiter violated his Constitutional rights (8th and 14th Amendments) by being deliberately indifferent to his medical needs. *Id.* McDougald claims that when Bauer and Rogers returned to his cell post-application of pepper spray both Bauer and Rogers ignored his requests for medical attention and decontamination. McDougald claims that

---

[2] Nurse Ryder is actually Nurse Reiter.

his Eight Amendment rights were violated as such alleged conduct was cruel and unusual punishment (Doc. 1 at 2).

Defendants' however, set forth a different version of facts relating to this incident. Defendants contend that McDougald, on October 7, 2016, in process of cuffing him at his cell entrance, began to pull away from the officer and took hold of the remaining cuff that was not fastened and refused to let go. McDougald refused several direct orders to release the cuff that he held in his hand. In light of McDougald's behavior and the danger of the metal handcuff he maintained in his hand McDougald received a short burst of OC ("pepper spray") from Officer Dillow. (Doc. 43, Ex. A, Dillow Interrog. #4, 5, and 6; Ex. B, Osborne Interrog. #1, 2, 4, 5, 6 and 7; Ex. E, Rules Infraction Board ("RIB") Pkt. p. 002 ; Ex. G, Use of Force ("UoF") Pkt. pp. 002, 004, 005, 006, 007, and 010); and Def. Ex. K, Institutional Camera Footage).

Thereafter, Officer Dillow asked Plaintiff if he wanted a decontamination shower, to which Plaintiff replied "go fuck yourself." (Doc. 43, Ex. G at 2). Defendant Dillow then contacted medical staff to have Plaintiff examined. *Id.* RN Reiter provides in her medical examination report that McDougald was not interested in decontamination nor a medical check. Moreover, RN Reiter noted that McDougald was in his cell laughing and clapping and stating words to the effect "I have my lawsuit now." (*See* Doc. 43, Ex. G, UoF w/ MER, p. 010; Ex. C, RN Reiter Interrog ¶¶ 2, 3, 5, 6, 8, 10).

McDougald's conduct was reviewed by the Rules Infraction Board ("RIB"). The RIB found (and the Warden's designee concurred) that McDougald violated a number of inmate rules. (Doc. 43, Ex. F, Ohio Adm. Code; rules 6, 60; Ex. E, RIB, pp. 003-008, 010-0011). McDougald refused to attend the RIB hearings and offer his testimony. (*Id*, RIB

packet, p. 003). The Use of Force Packet provides pertinent information as to findings of guilt against McDougald regarding the acts complained of in this case. (Doc. 43, Ex. E, RIB, pp. 003-008, 010-0011; Ex. F, Ohio Adm. Code; rules 6, 60; Ex. G).

Based on the foregoing, Defendants assert that they acted reasonable under the circumstance and are therefore entitled to judgment as a matter of law. The undersigned agrees.

## II. Defendants motion for Summary Judgment is well-taken

### A. Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 24748, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.,* 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Harris v. Adams,* 873 F.2d 929, 931 (6th Cir.1989) (quoting *Sixty Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348,

89 L.Ed.2d 538 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir.2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC,* 219 F.3d 547, 551 (6th Cir.2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *St. v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989) (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323–24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street,* 886 F.2d at 1479–80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Eighth Amendment Claims

As noted above, Plaintiff claims that Defendants violated his constitutional rights to be free from excessive force by deploying pepper spray into his cell in October 2016. Plaintiff further contends that after the pepper spray incident, Defendants were deliberately indifferent to his medical needs. Plaintiff also alleges that Defendants took these alleged actions in retaliation for his prior lawsuits.

5

*1. Legal Standard for Excessive Force under the Eighth Amendment*

A prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). Excessive force claims must focus "on the nature of the force rather than the extent of the injury...." *Id.* at 34. In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson,* 503 U.S. at 7; *Whitley,* 475 U.S. at 320-321.

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell v. McKinney,* 759 F.3d 573, 580-81 (6th Cir. 2014) (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm ... contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins,* 559 U.S. at 37 (quoting *Hudson,* 503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id.*(quoting *Hudson,* 503 U.S. at 7).

6

Corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres,* 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell,* 93 Fed.Appx. 723, 725 (6th Cir. 2004)). Accordingly, the Sixth Circuit has found no Eighth Amendment violation in numerous cases involving "the use of ... chemical agents against recalcitrant prisoners." *Id.* (quoting *Caldwell v. Moore,* 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)); *Jennings,* 93 Fed.Appx. at 725 ("The videotape squarely demonstrates that Jennings disobeyed repeated direct orders prior to the use of pepper spray."). *See also Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918, at *7 (S.D. Ohio Apr. 29, 2014) (Report and Recommendation) (Bowman, M.J.), *adopted,* 2014 WL 2172894 (S.D. Ohio May 23, 2014) (the defendant was entitled to qualified immunity because "no reasonable officer would have understood that it violated the Eighth Amendment to reactively aim chemical spray at Plaintiff in his cell for less than two seconds (based on the videotape record), in order to force a threatening inmate to retreat and restore order."). *But see Williams v. Curtin,* 631 F.3d 380, 384 (6th Cir. 2011) (the plaintiff stated a valid excessive force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him.").

*2. Legal Standard for Denial of Medical Care under the Eighth Amendment*

To establish a violation of his Eighth Amendment rights resulting from a denial of medical care, Plaintiff must show that prison officials acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Brooks v. Celeste,* 39 F.3d 125, 127 (6th Cir. 1994). A constitutional claim for denial of medical care

7

has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison Cty.,* 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Fanner,* 511 U.S. at 834; *Estelle*, 429 U.S. at 104). A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta,* 561 Fed.Appx. 497, 499 (6th Cir. 2014) (quoting *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008)).

The subjective component requires an inmate to show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Farmer,* 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Gunther*, 561 Fed.Appx. at 500 (quoting *Harrison*, 539 F.3d at 518). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cty. Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994). In sum, to prove the subjective component, the plaintiff must show that the official: (a) subjectively knew of a risk to the prisoner's health: (b) drew the inference that a substantial risk of harm to the prisoner existed; and (c) consciously disregarded that risk. *Farmer*, 511 U.S. at 837.

In opposing defendant's properly supported motion for summary judgment, plaintiff must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston v. Montgomery Cty.*

8

*Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011). He "cannot rest on the mere allegations of the pleadings." *Id. See* also *Maston*, 832 F. Supp.2d at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment).

Here, McDougald contends he was the subject of excessive force (pepper spray) and that he was denied medical attention by corrections officials following the OC spray on October 7, 2016. (Doc. 1). McDougald claims that he requested help when Nurse Reiter and Osborne looked into his cell during the time that he was suffering the effects of pepper spray but that both Reiter and Osborne ignored McDougald's request for help. As such, Plaintiff claims that Nurse Reiter violated his Constitutional rights by being deliberately indifferent to his medical needs. (Doc. 1 at 2). McDougald claims that when Bauer and Rogers returned to his cell post-application of pepper spray both Bauer and Rogers ignored his requests for medical attention and decontamination. McDougald claims that his Eighth Amendment rights were violated as such alleged conduct was cruel and unusual punishment. (Doc. 1). Notably, Plaintiff cites to the Defendants interrogatories and incidents reports and asserts that the Defendants gave "false information." (Doc. 34, Ex. A-I). However, other than asserting that Defendants version of the events were false Plaintiff failed to present any evidence to rebut Defendants' well-supported version of the events.

Defendants argue that summary judgment should be granted in their favor on Plaintiff's Eighth Amendment excessive force claim because the use of pepper spray under the circumstances constituted a reasonable use of force to gain control of Plaintiff. (Doc.). Notably, the record establishes that Plaintiff created a dangerous situation by

9

refusing direct orders to release a loose cuff. (*See* Doc. 43, Ex. A, Dillow Interrog. ¶¶ 3, 4, 5, 6; Ex. B Osborne Interrog. ¶¶ 1, 2; Ex. E, RIB Packet, pp. 002, 003, 005, 006, 010, and 011; Ex. G, Use of Force Packet pp. 002, 004, 005, 006, and 010; Ex. I, DVR, Camera Footage).

Thus, the undersigned agrees that McDougald's own conduct brought about this incident – he refused to let go of one cuff despites several orders to do so, thereby creating a penological safety issue and discipline situation that required Defendants to act. The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993) (citation omitted). The Eighth Amendment standard focuses on the official's "obdurancy and wantonness" and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 319–21.

The evidence establishes that the use of pepper spray by Defendant Dillow was a reasonable and minimal response to a noncompliant McDougald. Defendants Dillow and Osborne were entitled to use force to maintain order. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Notably, a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that officers did not violate an inmate's Eighth Amendment rights when they pepper sprayed him after he refused to obey orders); *Thomas v. Greene*, No. 99-3179, 1999 U.S.App. LEXIS 34054, 1999 WL 1253102 (6th Cir. Dec. 17, 1999) (affirming dismissal of prisoner's excessive force claim upon finding that he was uncooperative and threatening prior to being pepper sprayed); *White v.*

10

*Fowler*, 881 F.2d 1078 (6th Cir. 1989) (holding that officer was entitled to summary judgment on Plaintiff's excessive force claim even though Plaintiff was shackled when officer sprayed him with mace on a bus because the officer needed to restore "discipline and security to the bus").

Plaintiff's claim for denial of medical care also fails as a matter of law. In order to prevail on a claim of a violation of a prisoner's rights in relation to his medical care, e.g., deliberate medical indifference, the inmate must allege facts evidencing deliberate indifference on the part of the defendant to the prisoner's serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). While deliberate indifference does not require proof of intent to inflict pain or a detailed inquiry into the state of mind of the prison official, the official's acts or omissions must demonstrate a knowing indifference to the prisoner's serious medical needs. *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993).

Here, the evidence of record establishes that Defendants were not deliberately indifferent to McDougald's follow-up to the pepper spray incident. Notably, Defendants made several affirmative attempts by offering assistance to McDougald. The record shows that McDougald was offered decontamination and was seen by a nurse shortly after he was sprayed. RN Reiter's responses to McDougald's interrogatories and her MER support Defendants' position that McDougald was in fact offered decontamination following the pepper spray incident but that McDougald refused attention. (*See* Doc. 43, Ex. C, Reiter, RN Answers to Plaintiff's Interrogatories, pp. 1-3). *See also* RN Reiter's MER found at Def. Ex. G, UoF packet, containing medical exam report, at p. 010).

Moreover, McDougald has a sink and soap in his cell if he needed to wash off the pepper spray. (Doc. 43, Ex. B, pp 1-2).

Deliberate indifference requires that the official both know of and disregard an excessive risk to the inmate's health or safety; that is, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Negligence in regard to the prisoner's medical needs does not amount to deliberate indifference. *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993). In opposing defendant's properly supported motion for summary judgment, plaintiff must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston,* 832 F. Supp.2d at 849. He "cannot rest on the mere allegations of the pleadings." *Id.*

Here, Plaintiff's motion for summary judgment as well as his response in opposition to defendants' motion for summary judgment rests primarily on self- serving unsworn statements to support his denial of medical care claim. Notably, Plaintiff claims that after officers sprayed him with pepper spray, he was left "to burn and suffer with no offer of decontamination" (Doc. 34 ). Similar to his claim for excessive force, Plaintiff simply asserts that Defendants gave false statements on the incident reports as well as their answers to Plaintiff's interrogatories. As such, Plaintiff failed to present any evidence to establish that he was denied proper medical care and/or that Defendants were deliberately indifference to his serious medical needs. *see Maston*, 832 F. Supp.2d at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment).

Thus, because plaintiff has failed to submit any evidence creating a genuine issue of fact as to whether Defendants' use of force was reasonable under the circumstances and whether Defendants denied him proper medical treatment, summary judgment should be granted to Defendants Bauer, Dillow, Osborne, Reiter, Rogers on plaintiff's Eighth Amendment excessive force and denial of medical care claims.

*C. Retaliation*

Plaintiff also asserts that Defendants retaliated against him for exercising his First Amendment rights by filing grievances and/or lawsuits. As detailed above, Plaintiff alleges that Sgt. Dillow came up to the cell door and pepper sprayed him followed by both Dillow and Osborne stated "this is for filing lawsuits." (Doc. 1).

To state a retaliation claim, a plaintiff must allege three elements: (1) that he or she was engaged in protected conduct; (2) the adverse action was taken against him or her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

In applying these elements to Plaintiff's claims, Defendants first argue that Plaintiff was not engaged in protected conduct. Notably, at the time Plaintiff was sprayed with pepper spray, the records evidence indicates that he violated penological rules by failing to follow direct orders to release a loose cuff. (Doc. 43, Ex. A, Dillow Interrog. #4, 5, and 6; Ex. B, Osborne Interrog. #1, 2, 4, 5, 6 and 7; Ex. E, RIB Pkt. p. 002; Ex. G, UoF Pkt. pp. 002, 004, 005, 006, 007, and 010). Furthermore, as detailed above, Plaintiff has filed numerous lawsuits in federal court and Ohio's Court of Claims following any brief incident involving SOCF personnel's application of pepper spray.

13

With respect to the third element, Defendants contend that use of a short burst of pepper spray came about as a reasonable use of force against a prisoner in a maximum-security prison that refused to let go of a hand cuff that he could have used against the officers and/or potentially injure himself. (*See* Doc. 43, Ex. A, Dillow Interrogs, ¶¶ 4, 5, 6; Ex. B. Osborne Interrogs ¶¶ 1, 2, 5, 7; Ex. E, RIB, 002, 006, 010 and 011; Ex. G, UoF, pp. 002, 004, 005, 006). As such, Defendants contend that the use of pepper spray was not motivated by Plaintiff's alleged protected conduct. The undersigned agrees.

Notably, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under §1983.'" *Harbin–Bey*, 420 F.3d at 580, *quoting Gutierrez v. Lynch*, 826 F.2d1534, 1538–39 (6th Cir. 1987*); see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of a retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001)("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims"). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Retaliation claims must include a "chronology of events from which retaliation may plausibly be inferred." *Ishaag v. Compton*, 900 F.Supp. 935 (W.D. Tenn. 1995), *quoting Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988).

Here, Plaintiff has provided nothing beyond conclusory assertions to suggest that Officer Dillow and or Osborne "retaliated" against McDougald. To the contrary, the evidence establishes that Defendants deployed pepper spray after Plaintiff failed to

comply with several direct orders from the officers. Accordingly, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's retaliation claim.

### D. Qualified Immunity

In their last argument in favor of summary judgment, Defendants assert that they are entitled to qualified immunity on claims filed against them in their individual capacities because they acted reasonably under the circumstances. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200–201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). See also Dorsey v. Barber, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Here, the record evidence clearly established that any use of force by Defendants was "applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. The record further establishes that Defendants were not deliberately indifferent to his serious medical needs. As such, Plaintiff has failed to establish that he suffered a deprivation of any clearly established statutory or constitutional right that a reasonable official would understand violated the same. Therefore, the Defendants are immune from Plaintiff's claims for excessive force and are entitled to judgment as a matter of law.

### III. Conclusion

For these reasons, is therefore **RECOMMENDED** that Defendants' motion for summary judgment (Doc. 43) be **GRANTED**, Plaintiff's motion for summary judgment (Doc. 34) be **DENIED;** all remaining pending motions (Docs. 40, 47, 53, 54) be **DENIED as MOOT;** and this case be **CLOSED.**

 *s/*Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERONE MCDOUGALD,

    Plaintiff,

vs

MICHAEL DILLOW, et al.,

    Defendants.

Case No. 1:16-cv-1099

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).